UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DIANA AVDEEVA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10364-IT |
| | * | |
| KRISTEN M. SMITH, in her official | * | |
| capacity as U.S. Citizenship and Immigration | * | |
| Services Field Office Director, PETER | * | |
| SIMONDS, in his official capacity as a U.S. | * | |
| Citizenship and Immigration Services | * | |
| Immigration Services Officer, DENIS C. | * | |
| RIORDAN, in his official capacity as U.S. | * | |
| Citizenship and Immigration Services | * | |
| District Director, and TRACY RENAUD, in | * | |
| her official capacity as Acting Director of | * | |
| U.S. Citizenship and Immigration Services, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

June 9, 2022

TALWANI, D.J.

Pending before the court is Plaintiff Diana Avdeeva's Motion for Attorney's Fees [Doc. No. 46] pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the following reasons, the motion is DENIED.

**I.  Factual Background**[1]

On March 28, 2013, Avdeeva married Grigoriy Rogach, a United States citizen. Compl. ¶ 21, APA Action, ECF No. 1. In connection with her marriage, she filed an application to adjust

---

[1] The facts are presented as alleged by Avdeeva in this action and Avdeeva v. Smith, et al., No. 20-cv-10219 (D. Mass. Feb. 5, 2020) ("APA Action"), and as set forth in immigration records submitted in connection with the two actions.

her status to that of a permanent resident on November 5, 2013. Id. at ¶ 24. The application was approved on August 7, 2014, but because Avdeeva had been married for fewer than two years, her permanent resident status was granted on a conditional, two-year basis, pursuant to 8 U.S.C. § 1186a(a)(1). Id. at ¶ 24.

On July 29, 2016, Avdeeva and Rogach filed a petition to remove the conditions on her residence in the United States ("I-751 petition"). Id. at ¶ 25. The United States Citizenship and Immigration Services ("USCIS") did not schedule an interview nor waive the interview requirement. Id.[2]

On August 10, 2017, USCIS sent Avdeeva a request for evidence, stating that it needed additional evidence to process her petition. Id. at ¶ 30. Avdeeva, through counsel, sent the requested supplemental information on October 26, 2017. Id. at ¶ 32. USCIS still did not schedule or waive the interview and never responded in any other manner. Id. at ¶ 34.

In September 2018, Avdeeva and Rogach divorced. Id. at ¶ 35. Avdeeva notified USCIS of the divorce and requested to convert the pending I-751 petition from a joint petition to a waiver petition pursuant to 8 U.S.C. § 1186a(c)(4)(B). Id. at ¶ 36. In support, Avdeeva submitted evidence of cohabitation, numerous affidavits of third parties, photographs of the couple together over the years, and additional documentation demonstrating that, prior to the events leading to their divorce, Avdeeva and Rogach were in a bona fide marital relationship. Id. at ¶¶ 37-40. USCIS still did not schedule an interview or otherwise act on the petition. Id. at ¶ 42.

---

[2] Pursuant to 8 C.F.R. § 216.4(b)(1), the regional director of USCIS was required to "either waive the requirement for an interview and adjudicate the petition or arrange for an interview within 90 days of the date on which the petition was properly filed."

On May 9, 2019, Avdeeva applied for naturalization. Id. at ¶ 43. USCIS scheduled a naturalization interview for October 15, 2019. Id. at ¶ 44. At the naturalization interview, an immigration officer instead conducted an interview on Avdeeva's three-year old I-751 petition. Id. at ¶ 45.

On October 28, 2019, USCIS denied the I-751 petition, concluding that Avdeeva had failed to establish that her marriage to Rogach was entered into in good faith, and terminated Avdeeva's permanent resident status. USCIS Decision, APA Action, ECF No. 1-5. USCIS also issued a notice to appear, which stated that Avdeeva had been placed in removal proceedings and ordered her to appear before an immigration judge on April 7, 2020. Not. to Appear, APA Action, ECF No. 17-1. USCIS then administratively closed her naturalization case on the ground that USCIS did not have authority to adjudicate her naturalization application where she was subject to pending removal proceedings. Not. of Admin. Closure [Doc. No. 1-2].

II.     **Procedural Background**

On February 5, 2020, Avdeeva filed the APA action, which challenged USCIS's denial of her I-751 petition, revocation of her permanent resident status, and closing of her naturalization application as violations of various immigration regulations, the Administrative Procedures Act, 5 U.S.C. § 706(2)(a), and her right to due process. Compl., APA Action, ECF No. 1. On February 21, 2020, Avdeeva filed the instant action, which alleged that USCIS had failed to adjudicate her naturalization application within the required statutory period and asked the court to take jurisdiction over her naturalization application pursuant to 8 U.S.C. § 1447(b). Pet. [Doc. No. 1]. The government filed motions to dismiss both actions. Mot. to Dismiss [Doc. No. 14]; Mot. to Dismiss, APA Action, ECF. No. 16. Avdeeva opposed both motions. Opp. to Mot. to Dismiss [Doc. No. 22]; Opp. to Mot. to Dismiss, APA Action, ECF No. 21.

On July 2, 2020, while those motions were still pending, the parties jointly filed a Motion to Remand [Doc. No. 27], which reported that the parties had entered into a settlement agreement and asked the court to remand this action to USCIS "to determine the matter in accordance with the parties' settlement agreement." Mot. to Remand 1 [Doc. No. 27]. The motion incorporated the parties' settlement agreement as follows:

> [T]he Government will take the following steps:
>
> (a) Within 60 days of this Court's remand order, Plaintiff's removal proceedings will be terminated, her I-751 Petition will be approved, and a new N-400 interview will take place.
>
> (b) If Plaintiff meets all requirements for naturalization (including language and civics proficiency), the naturalization oath will be conducted within the same 60-day period following this Court's remand order.

Id. at 2. The motion also requested that the court "hold the APA action . . . in abeyance at this time" and stated that Avdeeva would "voluntarily dismiss all pending claims and withdraw her claim for damages under the Federal Tort Claims Act" following the government's satisfaction of the terms of the settlement agreement. Id. The court granted the motion, Elec. Order [Doc. No. 28], remanded this case to USCIS on July 6, 2020, Order of Remand [Doc. No. 29], administratively closed the case, and stayed the APA action.

USCIS granted Avdeeva's naturalization petition on August 17, 2020, and administered the oath of allegiance the same day; she is now a United States citizen. See Defs' Mem. 1 [Doc. No. 42]. Avdeeva promptly filed a notice of voluntary dismissal in the APA action. Not. of Voluntary Dismissal, APA Action, ECF No. 23.

On September 4, 2020, the parties filed status reports in this case. The government suggested that the case was moot where it had fulfilled its obligations under the settlement agreement. Defs' Status Report [Doc. No. 30]. Avdeeva explained that she intended to file a

request for fees and costs under the EAJA and refused to join the government in filing a joint notice of dismissal. Pl's Status Report [Doc. No. 31]. On September 8, 2020, the court directed the clerk to administratively reopen this case as no final judgment had been entered and no dismissal had been filed. Elec. Order [Doc. No. 32].

On October 6, 2020, Avdeeva sought entry of a judgment of dismissal pursuant to Fed. R. Civ. P. 58(a). Req. for Entry of J. [Doc. No. 38]. The government opposed entry of a judgment and filed a Motion to Dismiss for Lack of Jurisdiction [Doc. No. 39], arguing that the court should, instead, dismiss Avdeeva's Complaint [Doc. No. 1], where her claims were now moot. The court granted Avdeeva's request for entry of judgment and denied the government's motion as moot. Mem. & Order [Doc. No. 44]. On June 7, 2021, the court entered a Judgment of Dismissal [Doc. No. 45], dismissing the case "in accordance with the parties' settlement agreement." On September 6, 2021, Avdeeva filed her Motion for Attorney's Fees [Doc. No. 46].

### III. Discussion

Absent special circumstances, the EAJA authorizes attorneys' fees when (1) the plaintiff was the prevailing party, and (2) the government's position was without substantial justification. 28 U.S.C. § 2412(d). See also Castaneda-Castillo v. Holder, 723 F.3d 48, 68-69 (1st Cir. 2013). Avdeeva argues that she has satisfied both requirements and requests $41,080 in fees and costs. The government counters that special circumstances apply where the terms of the parties' settlement agreement preclude Avdeeva's request for EAJA fees. The court finds that the government's position was without substantial justification, but finds further that Avdeeva may not qualify as a "prevailing party" under First Circuit precedent and that, in any event, an award of fees is precluded by the terms of the settlement agreement.

5

### A. *Substantial Justification*

The government argues that its position on Avdeeva's naturalization application was substantially justified. Specifically, it claims that once Avdeeva's I-751 petition had been denied and she had been placed in removal proceedings, USCIS no longer had authority to adjudicate her naturalization application and therefore properly administratively closed that application. In making this argument, the government distinguishes between Avdeeva's naturalization application and her I-751 petition, which was the subject of the APA action. The government emphasizes that "[w]ith respect to *this* case," the agency actions giving rise to the litigation and its litigation positions were substantially justified.

Naturalization begins when a noncitizen files an application for naturalization with USCIS. 8 C.F.R. §§ 310, 334. A USCIS officer then conducts an investigation and an in-person examination of the applicant before issuing a decision. Id. § 335. If the officer does not issue a decision within 120 days of conducting the in-person examination, the applicant may apply to the district court, which may then decide the matter outright or remand the application back to USCIS with instructions. 8 U.S.C. § 1447(b). However, no application for naturalization shall be considered by USCIS "if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest." Id. § 1429.

As described above, Avdeeva filed her naturalization petition on May 9, 2019, and USCIS scheduled her naturalization interview for October 15, 2019. But on that day, instead of conducting the naturalization interview, USCIS resurrected Avdeeva's three-year-old I-751 petition, on which it had taken no prior action. Then, in the middle of Avdeeva's naturalization process, USCIS denied the I-751 petition and placed her in removal proceedings, which it then used as justification for closing her naturalization petition.

The government is correct that this case is ultimately about Avdeeva's naturalization petition. But in evaluating the government's position, a district court must "treat[] a case as an inclusive whole, rather than as atomized line-items." Comm'r, INS v. Jean, 496 U.S. 154, 161-62 (1990). "In other words, in evaluating the [g]overnment's position, [the court] must 'arrive at one conclusion that simultaneously encompasses and accommodates the entire civil action.'" Saysana v. Gillen, 614 F.3d 1, 5-6 (1st Cir. 2010) (quoting Dantran, Inc. v. U.S. Dep't of Labor, 246 F.3d 36, 41 (1st Cir. 2001)). And where USCIS is using its actions in response to Avdeeva's I-751 petition to justify its actions giving rise to the litigation here, the court's review must necessarily include some consideration of the reasonableness of USCIS's position with respect to the I-751 petition.

Taking those actions into consideration, USCIS sat on Avdeeva's I-751 petition for more than three years, in violation of its own regulations. See 8 C.F.R. § 216.4(b)(1) ("The director must either waive the requirement for an interview and adjudicate the petition or arrange for an interview within 90 days of the date on which the petition was properly filed"). Only when Avdeeva filed her naturalization petition did USCIS take any action on the I-751 petition—during her scheduled naturalization interview. Then, all on October 28, 2019, USCIS (1) denied Avdeeva's I-751 petition, (2) terminated her permanent resident status, (3) issued a notice to appear for removal proceedings, and (4) based on that notice to appear, administratively closed her naturalization petition for lack of jurisdiction, contrary to the words of the statute, which strips USCIS's jurisdiction to adjudicate naturalization petitions only "if there is pending against the applicant a removal proceeding *pursuant to a warrant of arrest*." 8 U.S.C. § 1429.[3]

---

[3] USCIS regulations state that a "notice to appear" for removal proceedings "shall be regarded as a warrant of arrest" for purposes of the statute. 8 C.F.R. § 318.1. However, as the Ninth Circuit

Finally, this case is distinguishable from Aronov v. Napolitano, 562 F.3d 84, 97 (1st Cir. 2009), where the First Circuit found a delay to allow an FBI background check "entirely reasonable." Here, the government has offered no explanation for either its failure to timely act on the I-751 petition or the decision to deny it. To the contrary, the government explicitly agreed after the case was filed here that Avdeeva's removal proceedings would be terminated, her I-751 petition would be approved, and a new N-400 interview would take place. While those terms were incorporated into the settlement agreement, the government presumably did not lower its standards for making immigration decisions and, instead, made these decisions on the merits.

In sum, the court finds no substantial justification for USCIS's termination of the naturalization process.

B.   *Prevailing Party*

Avdeeva's status as a prevailing party presents a more difficult question. To be a prevailing party, a plaintiff must show both a "material alteration of the legal relationship of the parties" and a "judicial imprimatur on the change." Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598, 604-05 (2001). Judicial imprimatur may include a judgment on the merits or a consent decree that memorializes a settlement agreement. Id. at 604. Moreover, "the formal label of 'consent decree' need not be attached; it is the reality, not the nomenclature which is at issue." Aronov, 562 F.3d at 90.

---

concluded in considering this issue, "[t]he meaning of 'warrant of arrest' in § 1429 is unambiguous" and is a distinct document from a notice to appear. Yith v. Nielsen, 881 F.3d 1155, 1166 (9th Cir. 2018). "If Congress intended to preclude the government's consideration of a naturalization petition whenever the applicant was in removal proceedings, then it would have had no need to state that § 1429 is applicable only when a removal proceeding is 'pursuant to a warrant of arrest.'" Id. at 1167.

Here, there were three relevant "material alterations" in the parties' relationship. First, Avdeeva's removal proceedings were terminated and her I-751 petition was approved. Second, USCIS reopened Avdeeva's naturalization petition. Finally, Avdeeva was naturalized.

Turning to the issue of judicial imprimatur, Avdeeva contends that the court's Order of Remand [Doc. No. 29] and its Judgment of Dismissal [Doc. No. 44] constitute the functional equivalent of a consent decree. The government argues that Avdeeva's success in becoming a United States citizen was achieved through a private, voluntary settlement, not a court order.

In Aronov, on which the government relies, the First Circuit concluded that "an order remanding to the agency is *alone* not enough to establish the needed imprimatur." Id. at 93 (emphasis added). "A plaintiff does not become a prevailing party if the court merely recognizes what the government has voluntarily agreed to and only 'requires the government to follow through with what it had already voluntarily promised to do.'" Id. at 92-93 (quoting Smith v. Fitchburg Public Schools, 401 F.3d 16, 27 (1st Cir. 2005)). In Aronov, the parties filed a joint motion for remand immediately after the plaintiff filed the action, and the district court remanded the matter to USCIS with no instruction and dismissed the underlying action. Id. at 92. Here, although the parties fully briefed the government's Motion to Dismiss [Doc. No. 14], as in Aronov, prior to dismissal, "[t]he court made no evaluation at all of the merits of the controversy—indeed the court was never asked to do so; it was only asked to dismiss the case." Id.

The dissent in Aronov pointed out that "district courts must determine that a proposed consent decree is fair, adequate and reasonable before entering it," and noted that "it would be difficult for a district court to determine the fairness, reasonableness and adequacy of a proposed agreement without making some evaluation of the merits of the case in relation to the relief

9

provided by the consent decree." Id. at 106 (Lipez, C.J., dissenting). Here, the court did carefully evaluate the merits of the settlement agreement before granting the motion to remand and did retain jurisdiction over the matter. Nonetheless, under the majority decision in Aronov, this "judicial imprimatur" may not be enough.

The court need not finally resolve the question, however, where the fee petition fails due to special circumstances, based on the language of the settlement agreement.

C.  *Special Circumstances*

In arguing that special circumstances preclude an award of EAJA fees, the government first directs the court's attention to pre-settlement communications in which Avdeeva evinced a willingness to forego EAJA fees on April 2, 2020. See Settlement Discussions 5 [Doc. No. 51-2]. But in April 2020, the government rejected Avdeeva's settlement offer and, instead, filed motions to dismiss in both cases. See Mot. to Dismiss [Doc. No. 14] (filed April 17, 2020); Mot. to Dismiss, APA Action, ECF No. 16 (filed May 4, 2020). Accordingly, the court finds no basis for concluding that Avdeeva's early settlement offer remained valid after the government rejected the offer and moved to dismiss both actions.

The parties resumed settlement negotiations in June 2020—after Avdeeva's counsel had opposed both motions—and these discussions apparently did not refer to a possible waiver of attorneys' fees. See Settlement Discussions 33-34 [Doc. No. 51-2]. However, the agreement the parties entered into required that, after the government complied with the agreement's terms, Avdeeva would "voluntarily dismiss all pending claims." The government argues that Avdeeva's agreement to "voluntarily dismiss all pending claims" must be read to include her demand for fees under EAJA.

10

Although Avdeeva counters that she was not required to carve out attorneys' fees from the settlement agreement, this is an issue of contract interpretation. While the parties did not define "claims," at the time of the settlement, Avdeeva's requests for relief in each action included "reasonable costs and attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)." Pet. [Doc. No.1]; Compl., APA Action, ECF No. 1. The settlement agreement contained a broad release as to *all* claims; there was no exception for any request for attorneys' fees and costs. Under those circumstances, the language of the agreement precludes any claim for fees, and it would therefore be inappropriate for the court to modify the negotiated release. See Freelander v. G. & K. Realty Corp., 357 Mass. 512, 516, 258 N.E.2d 786 (1970) (where contract is unambiguous, it must be enforced according to its terms).

### IV.   Conclusion

For the reasons set forth above, Avdeeva's Motion for Attorney's Fees [Doc. No. 46] is DENIED.

IT IS SO ORDERED.

June 9, 2022                                                    /s/ Indira Talwani
                                                                United States District Judge